Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| ANDRÉS RAMÍREZ MARCANO, por sí y en representación de la CLASE<br><br>Recurrido<br><br>v.<br><br>POPULAR AUTO, LLC; DEMANDADOS DESCONOCIDOS 1-3; ASEGURADORAS 1-4<br><br>Demandados<br><br>**BANCO POPULAR DE PUERTO RICO**<br><br>Peticionario | TA2026CE00762 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Civil núm.: BY2025CV02400 (701)<br><br>Sobre: Incumplimiento de Contrato; Daños y Perjuicios; Acción de Clase |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pérez Ocasio y la Jueza Trigo Ferraiuoli.

Sánchez Ramos, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 25 de junio de 2026.

El Tribunal de Primera Instancia ("TPI") denegó una solicitud de desestimación de una demanda mediante la cual se impugna la validez, bajo los términos contractuales pertinentes, de la cuantía que un banco cobra al demandante con el fin de adquirir el marbete de un vehículo de motor sujeto a un alquiler (*lease*). En el ejercicio de nuestra discreción, declinamos la invitación del banco a intervenir con lo actuado por el TPI, pues el récord no nos permite concluir, en esta etapa, que la cuantía cobrada sea compatible con el contrato entre las partes.

I.

En julio de 2025, el Sr. Andrés Ramírez Marcano (el "Demandante") presentó una acción de clase enmendada (la

"Demanda") en contra del Banco Popular de Puerto Rico (el "Banco"), lo cual fue aceptado por el TPI al día siguiente.

En lo pertinente, el Demandante alegó que, en el 2021, firmó un contrato de arrendamiento (el "Contrato") de un vehículo de motor (el "Vehículo"). Sostuvo que el Banco le cobra $240 por año ($20.00 por mes) "para cubrir el costo de la renovación del marbete". El Demandante arguye que este costo es excesivo porque, como él obtiene seguro privado para el Vehículo, por su cuenta y a su costo, al Banco únicamente le cuesta $147 comprar el referido marbete (entiéndase, $99 menos de lo que el Banco le cobra).

Afirmó que, al cuestionarle al Banco al respecto, un representante de este le respondió, por texto, que los $20 mensuales incluyen "la cantidad de $8.25 mensuales [$99 anuales] por el servicio ... [de] tener el marbete disponible para que el cliente lo tenga a tiempo". El Demandante señala que el Contrato "no hace mención alguna sobre dichos servicios y/o su correspondiente cobro". Por tanto, el Demandante aduce que este cobro infringe el Contrato, por lo cual reclama su devolución, los daños causados, intereses, costos y honorarios de abogado. También solicitó que se emita un interdicto permanente y una sentencia declaratoria.

El 24 de octubre, el Banco presentó una *Moción de Desestimación* (la "Moción"). Planteó que la cuantía cobrada está autorizada por la sección 13A del Contrato, la cual permite al Banco cobrar al Demandante, mensualmente, "una cantidad proporcional del costo anual de la licencia, incluyendo cualquier aumento en los costos para obtener la licencia, la titularidad o la inscripción incurridos por nosotros ...". Arguyó que dicho lenguaje, "por sus propios términos literales, permite la inclusión del gasto de gestoría incurrido por Banco Popular para este trámite de obtención de licencia". En la alternativa, el Banco sostuvo que la Demanda está basada en "daños y perjuicios por dolo incidental", por lo cual

"estaría prescrita al haber ya transcurrido más de cuatro años desde la consumación" del Contrato.

Mediante una Resolución notificada el 3 de junio (la "Resolución"), el TPI denegó la Moción. En lo pertinente, determinó que existía controversia sobre "si el cargo mensual de $8.25 correspondía a servicios de gestoría debidamente pactados entre las partes o si constituye un cargo no autorizado contractualmente." Al respecto, el TPI razonó que, aun de considerarse que el Contrato autoriza el cobro de gastos por gestoría, el Banco no había "acredit[ado] las alegadas gestiones para la renovación ni su costo". En cuanto al planteamiento de prescripción, el TPI concluyó que la Demanda giraba en torno a "dolo durante la ejecución de las obligaciones contractuales y no al momento de suscribir el [C]ontrato", por lo cual el término no comenzó desde la perfección del Contrato "sino desde la ocurrencia del daño o del acto de incumplimiento que lo genera".

El 15 de junio, el Banco presentó el recurso que nos ocupa, mediante el cual reproduce lo planteado ante el TPI en la Moción. Disponemos.

## II.

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728 (2016); *IG Builders, et al v. BBVAPR*, 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009). Distinto al recurso de apelación, el tribunal revisor tiene la facultad de expedir el recurso de manera discrecional, por tratarse de ordinario de asuntos interlocutorios. Sin embargo, nuestra discreción debe ejercerse de manera razonable, procurando siempre lograr una solución justiciera.

*Medina Nazario*, 194 DPR en la pág. 729; *IG Builders*, 185 DPR en la pág. 338; *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009).

La Regla 52.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, reglamenta en qué circunstancias este Tribunal podrá expedir un auto de *certiorari.* Al respecto, dispone, en lo pertinente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. [...]

Por su parte, la Regla 40 del Reglamento del Tribunal de Apelaciones establece los criterios a examinar para ejercer nuestra discreción, al disponer lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

III.

Hemos determinado, en el ejercicio de nuestra discreción, guiada por los criterios reglamentarios arriba citados, no expedir el auto solicitado. Veamos.

El TPI no cometió error de derecho alguno, ni abusó de su discreción, al denegar la Moción. Contrario a lo planteado por el Banco, el lenguaje contractual en controversia no permitía al TPI concluir, en esta etapa, que el cobro aquí impugnado está autorizado. En efecto, la sección 13A del Contrato permite el cobro al Demandante del "costo anual de la licencia", o de los "costos para obtener la licencia", según "incurridos" por el Banco.

No hay controversia sobre el hecho de que, de los $20 mensuales cobrados al Demandante, $11.75 en efecto corresponden al costo anual de la licencia incurrido por el Banco. Sin embargo, no está claro si el Contrato también permite, como parte del "costo[] para obtener la licencia", el supuesto gasto administrativo de "gestoría", ascendente a $8.25 mensuales ($99 por año).

Incluso, como bien razonó el TPI, aun si este tipo de gasto estuviese autorizado por el Contrato, el récord no permite concluir, en esta etapa, que el Banco en efecto incurre en este gasto con el fin de obtener la licencia del Vehículo. La duda al respecto se acentúa al advertirse que la cuantía asignada a esta "gestoría" es, coincidentalmente, equivalente al costo del denominado "seguro obligatorio". Ello levanta la interrogante legítima sobre si, realmente, esta porción del cobro está relacionada con gastos incurridos por concepto de "gestoría", en vez de con los $99 que inicialmente se cobran al Banco, "gasto" que realmente no es tal, pues al Banco se le reembolsa por dicho concepto a raíz de que el Demandante tiene seguro privado para el Vehículo.

En cuanto a la defensa de prescripción, al igual que el TPI, consideramos que las alegaciones de la Demanda no impugnan la validez del Contrato de su faz, sino la forma en que el Banco ha interpretado y ejecutado el mismo durante su vigencia. Por tanto, contrario a lo que arguye el Banco, el término prescriptivo no comenzó a transcurrir desde la firma del Contrato[1].

IV.

Por los fundamentos que anteceden, se deniega la expedición del auto de *certiorari* solicitado.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[1] Contrario a lo planteado por el Banco, no es determinante que se haya incluido el cargo de $20 mensuales en una hoja denominada *Divulgaciones bajo la Ley de Arrendamiento al Consumidor,* la cual fue entregada a, y firmada por, el Demandante al suscribirse el Contrato. Esta hoja no es parte del Contrato, sino que está sujeta a, y tiene que ser compatible con, el Contrato. La firma del Demandante en dicha hoja únicamente constituye un acuse de recibo de la información que por ley el Banco tiene que divulgar a raíz de la transacción. Tampoco afecta el análisis sobre prescripción, pues, al firmarse el Contrato, el Demandante podía razonablemente entender que la parte controvertida del cargo de $20 sería reembolsado cuando este acreditara haber comprado un seguro privado para el Vehículo.